1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                            EASTERN DISTRICT OF CALIFORNIA

10

11   RONBERCO COLLINS, et al.,                    No.  2:13-cv-00113-MCE-KJN

12                 Plaintiffs,

13          v.                                     **MEMORANDUM AND ORDER**

14   DIAMOND PET FOOD PROCESSORS
     OF CALIFORNIA, LLC, et al.,
15
                   Defendants.
16

17          Plaintiffs James Hollins, Ronberco Collins and Steven Weaver (collectively

18   "Plaintiffs") bring this action against Defendants Diamond Pet Food Processors of

19   California, LLC, Schell & Kampeter, Inc., Volt Information Sciences and Volt

20   Management Corporation[1] (collectively "Defendants"), seeking to recover damages for

21   alleged racial discrimination and harassment, retaliation and wrongful termination in

22   violation of Title VII of the Civil Rights Act and California's Fair Employment and Housing

23   Act ("FEHA").

24   ///

25   ///

26          [1] As alleged, Defendant Volt Management Corporation is a subsidiary of Defendant Volt
     Information Sciences, Inc.  (Compl. ¶ 8.)  Plaintiffs' allegations against both Defendants are identical and
27   arise out of the same events and occurrences.  For purposes of this Order, the Court will refer to both
     Defendants collectively as "Volt."
28
                                                  1

1    Presently before the Court is Defendants' Motion to Compel Arbitration and Stay

2    Proceedings.  (ECF No. 8.)  For the reasons stated below, the Court GRANTS

3    Defendants' Motion.[2]

4

5                                    **BACKGROUND**

6

7           This lawsuit arises out of Plaintiffs' temporary employment with contingent staffing

8    supplier Volt and Volt's client Diamond Pet Food Processors of California, LLC

9    ("Diamond").  (Compl. ¶¶ 19-48.)  Defendants jointly employed Plaintiffs with Diamond

10   supervising Plaintiffs on a daily basis in its Lathrop, California, work facility and Volt

11   paying their wages.  (Id. ¶¶ 19, 27, 39.)  Prior to commencement of Plaintiffs'

12   employment assignments, each of them executed an employment agreement with Volt,

13   including a written acknowledgment which verified their receipt of Volt's mandatory and

14   binding arbitration policy contained in the Volt Employee Handbook, as a condition of

15   their employment.  (Declaration of Dolores Torres ("Torres Decl."), ECF No. 8-2, ¶¶ 3-6.)

16   The arbitration policy in Plaintiffs' employment agreements states, in full:

17                      **<u>AGREEMENT TO ARBITRATE DISPUTES</u>: Any disputes
                        arising out of or relating to the actions of Volt or any**
18                      **assignment or termination of any assignment, and/or**
                        **disputes arising out of or related to the actions of Volt's**
19                      **Clients (or Client's employees), shall be settled by final**
                        **and binding arbitration, pursuant to the Federal**
20                      **Arbitration Act, in accordance with the rules of the**
                        **American Arbitration Association (www.adr.org), in the**
21                      **state where you were employed.  The arbitrator may**
                        **award attorney fees and/or costs to the prevailing party,**
22                      **in accordance with the law.  Judgment upon the**
                        **arbitration award may be entered in any court having**
23                      **jurisdiction.  Volt and you hereby waive our respective**
                        **rights to trial by jury of any cause of action or defense**
24                      **that we may have against each other or against any**
                        **Client of Volt.  This agreement to arbitrate disputes does**
25                      **not prevent you from filing a charge or claim with any**
                        **governmental administrative agency as permitted by**
26                      **applicable law.**

27   _____

28          [2] Because oral argument will not be of material assistance, the Court orders this matter submitted
     on the briefs.  E.D. Cal. Local Rule 230(g).

                                            2

1   (Torres Decl. Exs. A, B, C) (emphasis in original).  Plaintiffs acknowledged, by signing,

2   that they had "read and agree" to the terms and conditions of their respective

3   employment agreements.  (Id.)  Additionally, each Plaintiff signed a separate

4   "Acknowledgement" attesting that they "ha[d] received and reviewed [their] copy of the

5   Volt Employee Guide."  (Torres Decl. Exs. D, E, F.)  Volt's Employee Guide contains a

6   section entitled "Arbitration," which, in addition to clarifying which disputes are covered

7   by the employees' arbitration agreements, provides as follows:

> The arbitrator may be entitled to award attorneys' fees and/or costs to the prevailing party, in accordance with applicable law. . . .  The arbitrator may provide for any remedies that would be available in a comparable judicial proceeding. . . . Judgment upon the arbitrator's award may be filed in and enforced by any court having jurisdiction.  This does not prevent you from filing a charge or claim with any governmental administrative agency as permitted by applicable law.
>
> Your continued employment with Volt is your agreement to the above provision requiring arbitration of any and all employment/assignment disputes.

15  (Id.)

16          On January 18, 2013, Plaintiffs filed their operative Complaint in this Court

17  asserting various claims arising out of their employment with Volt while on assignment to

18  Volt's customer Diamond, alleging that both Volt and Diamond are liable for racial

19  discrimination and harassment, retaliation and wrongful termination in violation of federal

20  and California laws.  (Compl. ¶¶ 49-89.)  Following service of this lawsuit, Defendants'

21  counsel advised Plaintiffs' counsel of Plaintiffs' alleged obligation to arbitrate the instant

22  action.  (Declaration of Erin Medina ("Medina Decl."), ECF No. 8-1, ¶ 3.)  Plaintiffs

23  refused to submit their claims to binding arbitration, resulting in the filing of Defendants'

24  instant motion.  (Id. ¶¶ 4-7.)

25  ///

26  ///

27  ///

28  ///

3

1  **STANDARD**

2

3      The Federal Arbitration Act ("FAA") provides that a written provision in a "contract

4  evidencing a transaction involving commerce to settle by arbitration a controversy

5  thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable,

6  save upon such grounds as exist at law or in equity for the revocation of any contract."

7  9 U.S.C. § 2.  The FAA allows a party to seek a court order compelling arbitration where

8  another party refuses to arbitrate.  9 U.S.C. § 4.  Valid arbitration agreements must be

9  "rigorously enforced."  Perry v. Thomas, 482 U.S. 483, 490 (1987) (citation omitted).

10  The FAA "leaves no place for the exercise of discretion by a district court, but instead

11  mandates that district courts shall direct the parties to proceed to arbitration on issues as

12  to which an arbitration agreement has been signed."  Dean Witter Reynolds, Inc. v. Byrd,

13  470 U.S. 213, 218 (1985) (emphasis in original).

14      Generally, in deciding whether a dispute is subject to an arbitration agreement, a

15  court must answer two questions: (1) "whether a valid agreement to arbitrate exists,"

16  and, if so, (2) "whether the agreement encompasses the dispute at issue."  Chiron

17  Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  If a party

18  seeking arbitration establishes these two factors, the court must compel arbitration.

19  9 U.S.C. § 4; Chiron, 207 F.3d at 1130.  Accordingly, the Court's role "is strictly limited to

20  determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the

21  claim and any defenses to the arbitrator."  Republic of Nicaragua v. Standard Fruit Co.,

22  937 F.2d 469, 478 (9th Cir. 1991).

23      In determining the existence of an agreement to arbitrate, the district court looks

24  to "general state-law principles of contract interpretation, while giving due regard to the

25  federal policy in favor of arbitration."  Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046,

26  1049 (9th Cir. 1996).

27  ///

28  ///

4

1  "Although 'courts may not invalidate arbitration agreements under state law applicable

2  only to arbitration provisions,' general contract defenses such as fraud, duress, or

3  unconscionability, grounded in state contact law, may operate to invalidate arbitration

4  agreements." Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002)

5  (quoting Doctor's Ass'n., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).  However, courts

6  cannot apply even generally applicable defenses to contract enforceability, such as

7  unconscionability, in a way that disfavors and undermines arbitration.  AT&T Mobility

8  LLC v. Concepcion, 131 S. Ct. 1740, 1747 (2011).  Finally, "as a matter of federal law,

9  any doubts concerning the scope of arbitrable issues should be resolved in favor of

10 arbitration, whether the problem at hand is a construction of the contract language or an

11 allegation of waiver, delay, or like defense to arbitrability." Moses H. Cone Memorial

12 Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).  "An order to arbitrate . . .

13 should not be denied unless it may be said with positive assurance that the arbitration

14 clause is not susceptible of an interpretation that covers the asserted dispute." United

15 Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960).

16

17                                  **ANALYSIS**

18

19        The parties do not dispute the existence of individual employment agreements,

20 signed by each Plaintiff, containing the arbitration provisions encompassing Plaintiffs'

21 instant claims.  However, Plaintiffs argue that the arbitration agreements are

22 unenforceable because they are procedurally and substantively unconscionable.  (ECF

23 No. 9 at 6.[3])  Plaintiffs also argue that Defendants Schell & Kampeter, Inc., and Diamond

24 may not enforce the arbitration agreements against Plaintiffs because they are not

25 parties to those agreements.  (Id. at 19-20.)  It is undisputed that the arbitration

26 agreements at issue are governed by the FAA, and the parties agree that California law

27 governs the validity of those agreements.

28        [3] The page references are to the Court's ECF pagination.

5

1    Under California law, Plaintiffs must prove both procedural and substantive

2   unconscionability to overcome the statutory presumption in favor of arbitration.

3   Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000).  The

4   analysis of procedural unconscionability focuses on "oppression or surprise, due to

5   unequal bargaining power," while substantive unconscionability is based on "overly

6   harsh or one-sided results."  Id.  The two aspects need not be present to the same

7   degree, as the more substantively oppressive the contract term, the less evidence of

8   procedural unconscionability is required to come to the conclusion that the term is

9   unenforceable, and vice versa.  Id.  "The party resisting arbitration bears the burden of

10   proving unconscionability."  Pinnacle Museum Tower Ass'n. v. Pinnacle Market

11   Development, 55 Cal. 4th 223, 247 (2012).

12

13       **A.    Procedurally Unconscionability**

14

15    Plaintiffs first argue that the arbitration clause at issue is procedurally

16   unconscionable because the employment agreements containing the clause were

17   drafted by Volt and presented to Plaintiffs on a "take it or leave it" basis.  (ECF No. 9 at

18   9.)  According to Plaintiffs, they were not afforded an opportunity to revise the arbitration

19   language and were required to sign the employment agreement in order to be employed

20   by Defendants.  (ECF No. 9 at 10; Weaver Decl. ¶¶ 3-5; Collins Decl. ¶¶ 3-5; Hollins

21   Decl. ¶¶ 3-5.)

22    For procedural unconscionability, the court first "focuses on whether the contract

23   was one of adhesion."  Soltani v. W. & S. Life Ins. Co., 258 F.3d 1038, 1042 (9th Cir.

24   2001).  A contract of adhesion is "a standardized contract, which, imposed and drafted

25   by the party of superior bargaining strength, relegates to the subscribing party only the

26   opportunity to adhere to the contract or reject it."  Armendariz, 24 Cal.4th at 113.

27   ///

28   ///

1    Under California law, a contract of adhesion has an element of procedurally

2    unconscionability because it is "presented on a take-it-or-leave-it basis and [is]

3    oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation

4    and an absence of meaningful choice.'"  Nagrampa v. MailCoups Inc., 469 F.3d 1257,

5    1281 (9th Cir. 2006).

6          Here, it is undisputed that the arbitration agreements signed by Plaintiffs were the

7    contracts of adhesion because they were standard form contracts with boiler-plate

8    language drafted solely by Volt.  Plaintiffs were offered the agreements on a take-it-or-

9    leave-it basis without any opportunity to negotiate the terms or to opt-out of certain

10   provisions.  However, an arbitration agreement "is not rendered unenforceable just

11   because it is required as a condition of employment or offered on a 'take-it-or-leave-it'

12   basis.  Lagatree v. Luce, Forward, Hamilton & Scripps LLP, 74 Cal. App. 4th 1105, 1127

13   (1999).  The adhesive nature of the arbitration clause in Plaintiffs' employment

14   agreements, without more, gives rise only to a minimal degree of procedural

15   unconscionability.  See, e.g., Stacy v. Brinker Rest. Corp., 2012 WL 5186975, at *5 (E.D.

16   Cal. Oct. 18, 2012) ("[W]hile the take-it-or-leave-it nature of the Agreement renders it

17   procedurally unconscionable, the degree of procedural unconscionability is at the lower

18   end of the spectrum."); Miguel v. JPMorgan Chase Bank, N.A., 2013 WL 452418, at *6

19   (C.D. Cal. Feb. 5, 2013) (explaining that a small amount of procedural unconscionability

20   resulting from the arbitration clause being presented on a take-it-or-leave it-basis "is not

21   enough to render the contract unenforceable"); Hodsdon v. DirecTV, LLC, 2012 WL

22   5464615, at *5 (N.D. Cal. Nov. 8, 2012) ("The arbitration provision at issue here is

23   minimally procedurally unconscionable because it is undisputedly a contract of

24   adhesion.").

25   ///

26   ///

27   ///

28   ///

1       Plaintiffs however contend that the arbitration agreements' procedural

2   unconscionability is exacerbated by Volt's failure to attach the applicable rules of the

3   American Arbitration Association ("AAA") to the parties' employment agreements and

4   Volt's failure to specify which of the 78 sets of active rules listed on the AAA website

5   apply.  (ECF No. 9 at 11.)  Plaintiffs also argue that the arbitration agreements are

6   procedurally unconscionable because they fail to state whether arbitration would be

7   conducted under AAA's rules in effect at the time of the commencement of the contract

8   or at the time of arbitration.  (Id.)

9       Under California law, parties to an agreement may incorporate by reference into

10  their contract the terms of some other document.  Wolschlager v. Fid. Nat. Title Ins. Co.,

11  111 Cal. App. 4th 784, 790 (2003).  Thus, a "contract may validly include the provisions

12  of a document not physically a part of the basic contract."  Troyk v. Farmers Group., Inc.,

13  171 Cal. App. 4th 1305, 1331 (2009).  "For the terms of another document to be

14  incorporated into the document executed by the parties, the reference must be clear and

15  unequivocal, the reference must be called to the attention of the other party and he must

16  consent thereto, and the terms of the incorporated document must be known or easily

17  available to the contracting parties."  Shaw v. Regents of Univ. of Cal., 58 Cal. App. 4th

18  44, 54 (1997) (citations omitted).  All of these requirements are satisfied here.

19      The arbitration clause in Plaintiffs' employment agreements clearly and

20  unequivocally states, in bold-face print, that any disputes between the parties shall be

21  settled by final and binding arbitration "in accordance with the rules of the American

22  Arbitration Association (www.adr.org)."  (Torres Decl. Exs. A, B, C.)  The terms of the

23  incorporated document, the AAA Rules, were certainly available to Plaintiffs as they

24  could have easily accessed the hyperlink listed in the document.  Numerous courts have

25  concluded that incorporation of the AAA rules by reference into an otherwise valid

26  arbitration agreement does not render such an agreement procedurally unconscionable.

27  ///

28  ///

8

1  See, e.g., Miguel, 2013 WL 452418, at *5; Ulbrich v. Overstock.Com, Inc.,

2  887 F. Supp. 2d 924, 932-33 (N.D. Cal. 2012); Swarbrick v. Umpqua Bank, 2008 WL

3  3166016, at *3-5 (E.D. Cal. Aug.5, 2008).  By arguing that the AAA rules were not validly

4  incorporated into the employment agreements because they were not physically

5  attached to those agreements, Plaintiffs essentially contend that arbitration agreements

6  should be treated differently from other types of contracts with respect to incorporation

7  by reference.  This argument lacks merit in light of the Supreme Court's clear mandate

8  that "courts must place arbitration agreements on an equal footing with other contracts

9  and enforce them according to their terms." Concepcion, 131 S. Ct. at 1745-46 (internal

10  citations omitted).

11       Plaintiffs' contention that they could not reasonably know which of the 78 sets of

12  rules available on the AAA website applies is also unpersuasive.  First, the 78 sets of

13  rules referenced by Plaintiffs cover various types of non-employment disputes ranging

14  from "International Dispute Resolution Procedures" to "Michigan Home Buyer Home

15  Seller Arbitration Rules."  (Pls.' Request for Judicial Notice ("Pls.' RJN") Ex. A, ECF

16  No. 9-4.)  The Court fails to see how Plaintiffs could have reasonably believed that any

17  of those rules would apply to their employment-related disputes.  Second, even if an

18  ambiguity existed as to what set of the AAA's employment-related rules should apply to

19  the parties' instant dispute, the AAA rules themselves resolve such ambiguity in favor of

20  the AAA's Employment Arbitration Rules and Mediation Procedures.

21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

9

1  <u>See</u> AAA Employment Arbitration Rules and Mediation Procedures[4] ("AAA Employment

2  Arbitration Rules"), Art. 1; <u>see also</u> <u>Perez v. Maid Brigade, Inc.</u>, 2007 WL 2990368, at *6

3  n.6 (N.D. Cal. Oct. 11, 2007) (concluding that the arbitration agreement incorporating

4  AAA rules was enforceable even though the agreement did not specify whether the

5  AAA's Labor Arbitration Rules or Employment Arbitration Rules apply because the AAA's

6  rule themselves resolve any such ambiguity in favor of the Employment Arbitration

7  Rules); <u>Morga & Medlin Ins. Agency v. QBE Ins. Corp.</u>, 2012 WL 2499952, at *6 (E.D.

8  Cal. June 27, 2012) (incorporation of AAA rules by reference is valid even if the

9  arbitration agreement fails to specify exactly which AAA rules apply as long the court can

10  feasibly construe the agreement as to carry into effect the reasonable intention of the

11  parties).  Finally, Plaintiffs have not demonstrated that more than one set of the AAA

12  rules may apply to the instant dispute.

13      As to Plaintiffs argument that it is not clear from the arbitration agreement which

14  version of the AAA rules apply, the AAA Employment Arbitration Rules also resolve this

15  uncertainty by stating that "[t]hese rules, and any amendment of them, shall apply in the

16  form in effect at the time the demand for arbitration or submission is received by the

17  AAA."  <u>See</u> AAA Employment Arbitration Rules, Art. 1; <u>see also</u> <u>Lucas v. Gund</u>,

18  450 F. Supp. 2d 1125, 1131-32 (C.D. Cal. 2006) (concluding that an ambiguity as to

19  what version of the AAA rules should apply should be resolved by reference to the Rules

20  themselves.)

21  _____

22      [4] Article 1 of the Employment Arbitration Rules and Mediation Procedures provides as follows:

23      The parties shall be deemed to have made these rules a part of their
        arbitration agreement whenever they have provided for arbitration by the
24      [AAA] . . . or for arbitration by the AAA of an employment dispute without
        specifying particular rules.

25  (<u>See</u> Defs.' Request for Judicial Notice ("Defs.' RJN") Ex. K, ECF No. 8-3.)  The Court may take judicial
26  notice of the AAA Employment Arbitration Rules as those Rules can be considered a "fact that is not
    subject to reasonable dispute because it . . . can be accurately and readily determined from sources
27  whose accuracy cannot reasonably be questioned."  <u>See</u> Fed. R. Evid. 201; <u>see also</u> <u>Chavarria v. Ralphs
    Grocer Co.</u>, 812 F. Supp. 2d 1079, 1087 n.8 (C.D. Cal. 2011) (taking judicial notice of the AAA Rules);
28  <u>Wilson v. United Health Group, Inc.</u>, 2012 WL 6088318, at *4 n.4 (E.D. Cal. Dec. 6, 2012) (same).  The
    Court has reviewed Plaintiffs' objections to Defendants' RJN (ECF No. 9-5) and finds them unpersuasive.

1    Thus, under California law, the AAA rules were properly incorporated into the

2  arbitration agreements signed by Plaintiffs.  Accordingly, the only procedural

3  unconscionability that Plaintiffs have been able to demonstrate arises out of the

4  adhesive nature of the employment agreements containing the arbitration clause at

5  issue.  As analyzed above, the degree of such unconscionability is minimal, which

6  requires Plaintiffs to establish a high degree of substantive unconscionability to avoid

7  arbitration.  See Dotson v. Amgen, Inc., 181 Cal. App. 4th 975, 982 (2010).

8

9    **B.    Substantive Unconscionability**

10

11    "Substantive unconscionability pertains to the fairness of an agreement's actual

12  terms and to assessments of whether they are overly harsh or one-sided."  Pinnacle

13  Museum Tower Ass'n., 55 Cal.4th at 246.  Under California law, only a "modicum of

14  bilaterality" is required to save an agreement from substantive unconscionability.

15  Flores v. Transamerica HomeFirst, Inc., 93 Cal. App. 4th 846, 854 (2001).  Plaintiffs

16  argue that the arbitration agreements are substantively unconscionable because they

17  (1) allow the employer to recover attorney's fees; (2) lack mutuality; and (3) do not

18  comply with the minimum requirements articulated by the California Supreme Court's

19  decision in Armendariz.  (ECF No. 9 at 12-18.)

20    "[W]hen an employer imposes mandatory arbitration as a condition of

21  employment, the arbitration agreement or arbitration process cannot generally require

22  the employee to bear any type of expense that the employee would not be required to

23  bear if he or she were free to bring the action in court."  Armendariz, 24 Cal.4th at

24  110-11.  As relevant for the purposes of Defendants' instant motion, for claims brought

25  under the FEHA, a court may always award attorney's fees to the prevailing plaintiff, but

26  attorney's fees can be awarded to a prevailing defendant only if the suit is "frivolous,

27  unreasonable or without foundation."  Rosenman v. Christensen, 91 Cal. App. 4th 859,

28  864-66 (2001).

1    In the instant case, each arbitration agreement states, in relevant part: "The

2    arbitrator may award attorney fees and/or costs to the prevailing party, in accordance

3    with the law." (Torres Decl. Exs. A, B, C) (emphasis added.)  Plaintiffs argue that this

4    provision allows an arbitrator to make Plaintiffs liable for Defendants' attorney's fees

5    even if Plaintiffs' lawsuit is not frivolous.  In support of their unconscionability argument,

6    Plaintiffs rely on Trivedi v. Curexo Tech. Corp., 189 Cal. App. 4th 387, 392 (2010), in

7    which the court invalidated an arbitration agreement which provided that the prevailing

8    party "shall be entitled to recover from the other party all costs, expenses and

9    reasonable attorney fees" incurred in an arbitration.  (ECF No. 9 at 12.)  The Trivedi

10   court found this mandatory attorney fee and cost provision in favor of the prevailing party

11   to be unconscionable because it "weaken[ed] the legal protection provided to plaintiffs

12   who bring nonfrivolous actions from being assessed fees and costs."  Trivedi,

13   189 Cal. App. 4th at 394-95.

14   In the instant case, unlike in Trivedi, an arbitrator's right to award attorney's fees

15   to the prevailing party is explicitly limited by the "in accordance with law" provision.

16   While the arbitration agreement in Triverdi mandated the recovery of fees by the

17   prevailing party, agreements signed by Plaintiffs provide for an award of attorney's fees

18   when authorized by statute and in accordance with the substantive applicable law.

19   Thus, Plaintiffs' fears that they would be required to pay their employer's attorney's fees

20   are unfounded.  Additionally, the court must reasonably interpret the arbitration

21   agreements "in a manner that renders [them] enforceable rather than void."  See

22   Pearson Dental Supplies, Inc. v. Superior Court, 48 Cal. 4th 665, 682 (2010).  Because

23   the attorney's fee provision in the arbitration agreements can be reasonably interpreted

24   as allowing an arbitrator to award attorney's fees only when permitted by law, the

25   arbitration agreements are not substantively unconscionable.

26   Further, Plaintiffs argue that the arbitration provisions lack mutuality because "the

27   arbitration language does not sufficiently indicate" that Volt also promises to arbitrate its

28   potential claims against the employee.  (ECF No. 9 at 15.)

1  Plaintiffs' argument here is contradicted by the plain language of the arbitrations

2  agreements, each of which states: "Volt and you hereby waive our respective rights to

3  trial by jury of any cause of action or defense that we may have against each other or

4  against any Client of Volt."  (See Torres Decl. Exs. A, B, C) (emphasis added.)  Thus,

5  the arbitration agreements signed by Plaintiffs have the requisite "modicum of

6  bilaterality" to be enforceable.  See Flores, 93 Cal. App. 4th at 854.

7         Finally, Plaintiffs argue that the arbitration agreements are substantively

8  unconscionable under Armendariz because they do not provide for a neutral arbitrator

9  and adequate discovery, do not require a decision allowing limited judicial review, do not

10  permit the types of relief available in court, and do not limit the employee's forum costs.

11  (ECF No. 9 at 16-18.)  Plaintiffs' argument here is based on their earlier contention that

12  the AAA rules do not constitute a part of the arbitration agreements and thus cannot

13  supply the necessary rules to make the arbitration agreements enforceable.  As

14  analyzed above, the AAA Employment Arbitration Rules were validly incorporated by

15  reference into the arbitration agreements at issue and, as such, form an integral part of

16  those agreements.  Plaintiffs do not argue that the AAA rules do not satisfy the

17  Armerndariz requirements.  In fact, courts generally regard the AAA rules as being

18  "neutral and fair."  Lagatree, 74 Cal. App. 4th at 1126-27.

19         Thus, the Court concludes that the arbitration agreements signed by Plaintiffs are

20  not substantively unconscionable.  Because Plaintiffs have failed to meet their burden of

21  demonstrating that the arbitration agreements are both procedurally and substantively

22  unconscionable, the Court must enforce the agreements and direct Plaintiffs to arbitrate

23  their claims against Defendants.  See Dean Witter Reynolds, Inc., 470 U.S. at 218.

24  ///

25  ///

26  ///

27  ///

28  ///

**C.    Defendants Diamond and Schell & Kampeter May Enforce the Arbitration Agreement as Third-Party Beneficiaries**

Plaintiffs allege that Defendants Diamond and Schell & Kampeter[5] may not enforce the arbitration agreements at issue with respect to Plaintiffs' claims against those Defendants.  (ECF No. 9 at 14.)  Defendants counter that Diamond and Schell & Kampeter can enforce the agreements as third-party beneficiaries under the contracts. (ECF No. 8 at 19-20.)

"A litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." Kramer v. Toyota Motor Corp., 705 F.3d 1122, 1128 (9th Cir. 2013) (citing Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 632 (2009)).  Accordingly, the Court will look to California contract law to determine whether Diamond and Schell & Kampeter, as nonsignatories, can compel Plaintiffs to arbitrate the instant dispute.

"Generally speaking, one must be a party to an arbitration agreement to be bound by it or invoke it." Molecular Analytical Sys. v. Ciphergen Biosystems, Inc., 186 Cal. App. 4th 696, 706 (2010).  However, under California law, nonsignatories may enforce an arbitration agreement when they are "agents or alter egos of a signatory party or intended third party beneficiaries of an arbitration agreement." Bouton v. USSA Cas. Ins. Co., 167 Cal. App. 4th 412, 424 (2008).  The Ninth Circuit has explained California's law on third-party beneficiaries as follows:

> California's contract principles on third party beneficiaries are well known.   Under California law, a "contract, made expressly for the benefit of a third party, may be enforced by him at any time before the parties thereto rescind it."  Cal. Civ. Code § 1559.  A third party qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the terms of the contract make that intent evident. Although a third party need not be expressly named or identified in a contract, a party must demonstrate that it is a member of a class of persons for whose benefit it was made.

---

[5] As alleged by Plaintiffs, Diamond is a subsidiary of Schell & Kampeter.  (Compl. ¶ 6.)  Plaintiffs' allegations against both Defendants are identical and arise out of Diamond's employment of Plaintiffs.

1
2
3

> Whether the third party is an intended beneficiary . . . involves construction of the intention of the parties, gathered from reading the contract as a whole in light of the circumstances under which it was entered.

4   Balsam v. Tucows, Inc., 627 F.3d 1158, 1161 (9th Cir.2010) (internal citations, quotation

5   marks and brackets omitted).  While intent is "pivotal" in determining whether a

6   nonsignatory is a third-party beneficiary of the arbitration agreement, "there is no

7   requirement that 'both of the contracting parties must intend to benefit the third party.

8   . . .'  Rather, 'it is sufficient that the promisor must have understood that the promisee

9   had such intent.'"  Spinks v. Equity Residential Briarwood Apartments, 171 Cal. App. 4th

10  1004, 1023 (2009) (internal citations omitted).  "Ascertaining this intent is a question of

11  ordinary contract interpretation."  Id.

12       Here, the arbitration agreements signed by Plaintiffs state:

13
14
15
16
17

> Any disputes arising out of or relating to the actions of Volt or any assignment or termination of any assignment, and/or disputes arising out of or related to the actions of Volt's Clients (or Client's employees), shall be settled by final and binding arbitration, pursuant to the Federal Arbitration Act . . . Volt and you hereby waive our respective rights to trial by jury of any cause of action or defense that we may have against each other or against any Client of Volt. . . .

18  (Torres Decl. ¶ 4 & Exs. A, B, C) (emphasis added).  The plain meaning of the contract

19  evidences the parties' intent to include claims against third parties, Volt's Clients, within

20  the scope of the arbitration agreement.  Thus, Defendant Diamond and its parent

21  corporation Schell & Kampeter, as clients of Volt, clearly qualify as intended third-party

22  beneficiaries for whose benefit the arbitration agreement was made.  Accordingly,

23  Diamond and Schell & Kampeter can compel Plaintiffs to submit their claims to

24  arbitration pursuant to the terms of Plaintiffs' respective arbitration agreements.[6]

25
26
27
28

[6] Plaintiffs also argue that the Court should refuse to compel arbitration because Defendants Diamond and Schell & Kampeter are "third parties" within the meaning of California Code of Civil Procedure § 1281.2(c) (ECF No. 9 at 19.)  Section 1281.2(c) gives trial court discretion to deny a motion to compel arbitration when "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of transactions and there is a possibility of conflicting rulings of a common issue of law or fact."  First, because the arbitration agreements at issue are governed by the FAA, California's procedural rules, including Cal. Code Civ.

1

## CONCLUSION

2

3          For the reasons stated above, Defendants' Motion to Compel Arbitration (ECF

4  No. 8) is GRANTED.  This case is stayed pending completion of the required arbitration.

5          IT IS SO ORDERED.

6  DATED:  April 25, 2013

7

8  _____

   MORRISON C. ENGLAND, JR, CHIEF JUDGE
9  UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  Proc. § 1281.2(c), are inapplicable.  Second, even if Section 1281.2(c) applied, Defendants Diamond and
   Schell & Kampeter are not "third parties" within the meaning of that Section but intended third-party
28  beneficiaries of the arbitration agreements, and thus can compel Plaintiffs to arbitrate their instant claims.

16